UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY W. PALMER,

                                        Plaintiff,

        v.                                                                    **REPORT**
                                                                               **and**
SAFETEC OF AMERICA, INC.,                                  **RECOMMENDATION**

                                        Defendant.                **11-CV-00702A(F)**

APPEARANCES:          ANTHONY W. PALMER, *Pro Se*
                                2444 Cayuga Street
                                Niagara Falls, New York 14304

                                ANDREA L. SAMMARCO, ESQ.
                                The Sammarco Law Firm, LLP
                                ATTORNEY FOR THE DEFENDANT
                                1207 Delaware Avenue, Suite 219
                                Buffalo, New York 14209

## JURISDICTION

        This action was referred to the undersigned by Honorable Richard J. Arcara on

January 17, 2012, for pretrial matters, including Report and Recommendation on

dispositive motions.  The matter is presently before the court on Defendant's motion to

dismiss (Doc. No. 10), filed November 30, 2011.

## BACKGROUND AND FACTS[1]

        Plaintiff Anthony W. Palmer ("Plaintiff"), is a male who was, at all times relevant

to this action, 45 years old, with an unspecified disability.  Complaint ¶ 14.  Proceeding

_____

        [1]The Facts are taken from the pleadings and motion papers filed in this action.

*pro se*, Plaintiff commenced this action by filing a complaint on August 24, 2011 (Doc. No. 1) ("the Complaint"), alleging employment discrimination and retaliation, based on sex, age, and disability, against former employer, Defendant Safetec of America, Inc. ("Defendant" or "Safetec"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII") (sex), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et. seq.* ("the ADEA") (age), Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et. seq.* ("the ADA") (disability), and New York State Human Rights Law, N.Y. Exec. Law § 290 *et. seq.* (sex, age, and disability).

On July 14, 2008, Plaintiff commenced working for Defendant until August 6, 2009 when Plaintiff's employment was terminated.  Complaint ¶ 19; EEOC Charge[2] at 1.  According to Plaintiff, throughout his employment with Defendant, Plaintiff's supervisor, Steve Torrigan ("Torrigan"), subjected Plaintiff to threats of physical abuse, and racial slurs, and that both Torrigan and one Nadine Karaga ("Karaga"), directed harassing comments toward Plaintiff.  EEOC Charge at 1.  Plaintiff maintains that he "constantly complained" to Defendant's "Human Resources representatives," who made no attempt to correct the situation and the undesirable behavior of Torrigan and Karaga continued.  *Id.*  On August 5, 2009, following an altercation with Torrigan, Plaintiff alleges he became ill and was given permission to go home.  Complaint ¶ 19; EEOC Charge at 1.  Plaintiff claims on August 6, 2009, he received a voice-mail message advising Plaintiff to contact Defendant if Plaintiff wanted to continue his employment

---

[2]References to "EEOC Charge" are to the Charge of Discrimination Plaintiff filed on September 21, 2009, with the New York State Division of Human Rights, a copy of which is attached as an exhibit to the Complaint.

with Defendant.  *Id.*  Plaintiff maintains that although he immediately telephoned

Defendant, he was informed his employment had been terminated because Plaintiff

had "walked off the job."  Complaint ¶ 19; EEOC Charge at 1.  Paperwork that

Defendant mailed to Plaintiff regarding the termination of Plaintiff's employment

indicated that Plaintiff had quit.  *Id.*  At the time of his termination, Plaintiff's position

with Defendant was classified as a Lead Formulator.  *Id.*

On September 24, 2009, Plaintiff filed with the New York State Division of

Human Rights a Charge of Discrimination alleging employment discrimination and

retaliation based on age, gender, and an unspecified disability of which Plaintiff

maintains Defendant was aware, and that Defendant replaced Plaintiff with several

younger employees.  EEOC Charge at 1.  Plaintiff further asserted that following the

termination of his employment, Defendant had retaliated against Plaintiff by making

false statements intended to prevent Plaintiff from obtaining unemployment benefits,

and misinformed Plaintiff regarding his rights to COBRA benefits, causing Plaintiff to

miss the deadline for filing for such benefits.  EEOC Charge at 2.

On May 25, 2011, the Equal Employment Opportunity Commission ("EEOC")

issued a Dismissal and Notice of Rights ("Right to Sue Letter")[3] informing that the

EEOC was "unable to conclude that the information obtained established violations of

the statutes," and advising that any litigation Plaintiff intended to commence against

Defendant with regard to the termination of his employment "**must be filed WITHIN 90**

**DAYS of your receipt of this notice**; or your right to sue based on this charge will be

---

[3] A copy of the Right to Sue Letter is attached to the Complaint.

lost."  Right to Sue Letter (emphasis in original).  Plaintiff asserts he received the Right to Sue Letter on May 26, 2011.  Complaint ¶ 18.

Accordingly Plaintiff, proceeding *pro se*, commenced the instant action on August 24, 2011, claiming alleging employment discrimination by Defendant's termination of Plaintiff's employment, failing to provide Plaintiff with a reasonable accommodation of Plaintiff's unspecified disability, subjecting Plaintiff to unequal terms and conditions of employment to harass Plaintiff on the basis of his age, sex, and disability, providing false statements to the New York State Department of Labor to prevent Plaintiff from receiving unemployment benefits subsequent to the termination of Plaintiff's employment, and misinforming Plaintiff that he was ineligible for "ARRA"[4] (COBRA health insurance) benefits.  Complaint ¶ 13. Plaintiff further claims Defendant '"wrongfully terminated" Plaintiff in denying Plaintiff "the same benefit afforded to other employees in regards to the attendance point system."  Complaint ¶ 19.  Plaintiff further claims that Defendant replaced Plaintiff with younger workers, provided "false and damaging info" to the New York State Department of Labor to deny Plaintiff's unemployment benefits claim "while giving those benefits to females", and "attempted to fraudulently deny" Plaintiff's "ARRA [COBRA health insurance] benefits."  *Id.* Lastly, Plaintiff states without further elaboration, that Plaintiff has other grievances against Defendant, "too much to list." *Id.*

On November 30, 2011, Defendant moved to dismiss the Complaint (Doc. Nos. 10) ("Defendant's Motion"), for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6)

---

[4] Nowhere within the record is the term "ARRA" further described or specified.

("Rule 12(b)(6)").  Defendant's motion is supported by the attached Attorney Affidavit of

Andrea L. Sammarco, Esq. (Doc. No. 10-1) ("Sammarco Affidavit"), with exhibit A (Doc.

No. 10-2) ("Sammarco Affidavit Exhibit"),[5] and the Memorandum of Law of Defendant

Safetec of America, Inc., in Support of Motion to Dismiss (Doc. No. 10-3) ("Defendant's

Memorandum").

Plaintiff's Opposition to Motion to Dismiss (Doc. No. 19) ("Plaintiff's Response"),

was filed on February 28, 2012, and contains many additional details relating to

Plaintiff's allegations of discrimination based on age, sex and disability during his

employment and subsequent termination from the Defendant not found in the

Complaint.  Defendant did not file any reply in further support of its motion.  Oral

argument was deemed unnecessary.

Based on the following, Defendant's motion should be DENIED insofar as

Defendant asserts the action is time-barred, and GRANTED insofar as Defendant

seeks to dismiss the Complaint for failing to state a claim.

## DISCUSSION

Defendant moves to dismiss the Complaint for failure to state a claim, asserting

Plaintiff has failed to allege sufficient facts to set forth a claim for employment

discrimination or retaliation based on sex, age, or disability.  Defendant's Memorandum

at 5-9.  Alternatively, Defendant argues that the action is time-barred because the

Complaint was filed more than 90 days from Plaintiff's receipt of the EEOC's Right to

---

[5] Because the Sammarco Affidavit was not signed or notarized, it was refiled, along with the attached Sammarco Affidavit Exhibit, on November 30, 2011 (Doc. Nos. 11 and 11-1).

Sue Letter. *Id.* at 9-10.  In opposition, Plaintiff argues that the sole reason for his

termination was his type 2 diabetes condition, which caused Plaintiff to leave work early

on August 5, 2009.  Plaintiff's Response at 2.   Plaintiff also denies late filing of his

Complaint, stating that the Complaint "was filed on the 90th day" of the 90-day period

within which to commence an action under Plaintiff's claim.  Plaintiff's Response at 5.

Because the statutory time limit in which a plaintiff claiming employment discrimination

must file suit is strictly enforced and the court cannot extend the period "by even one

day," *Johnson v. Al Tech Specialities Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984), the

court first addresses whether the action is time-barred.


**1.  Timeliness of Plaintiff's Complaint**

It is undisputed that Plaintiff received the Right to Sue Letter on May 26, 2011.

*See* Complaint ¶ 12 (alleging Plaintiff received the EEOC's Right to Sue Letter on May

26, 2011); Defendant's Memorandum at 10 ("Plaintiff has specifically acknowledged

that he received the Right to Sue Letter on May 26, 2011." (citing Complaint ¶ 12).

Defendant seeks dismissal of the instant action on the basis that Plaintiff's filing of the

Complaint on August 24, 2011 was untimely because "August 23rd is the 90th day of the

time frame, where May 26th is Day 1 of the 90 day window."  Defendant's Memorandum

at 9-10.  Plaintiff maintains in opposition that the date the action was filed, August 24,

2011, was the last permissible date to timely file the action.  Plaintiff's Response at 5-9.

Actions commenced under Title VII, the ADEA or ADA must be filed within 90

days from Plaintiff's receipt of the EEOC's Right to Sue Letter.  42 U.S.C. § 2000e-

5(f)(1), § 12117(a).  Courts have strictly enforced this statutory time limit and, "in the

absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Johnson*, 731 F.2d at 146 (affirming dismissal of Title VII action filed 97 days after notice (internal quotation omitted)).  S*ee also Zerilli–Edelglass v. New York City Transit Authority,* 333 F.3d 74, 78 (2d Cir. 2003) (affirming dismissal of Title VII and ADA complaint filed by *pro se* plaintiff 96 days after receipt of right to sue notice); *Manley v. New York City Police Dept.*, 2005 WL 2664220, at * 2, 5 (E.D.N.Y. Oct. 19, 2005) (dismissing Title VII claim as untimely where lawsuit was filed 91 days after receipt of right to sue letter).  That a plaintiff is proceeding *pro se* does not exempt plaintiff "from compliance with relevant rules of procedural and substantive law." *Amnay v. Del Labs*, 117 F.Supp.2d 283, 285 (E.D.N.Y. Sept. 4, 2000) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *see also Zerilli–Edelglass*, 333 F.3d at 78 (late filed complaint alleging Title VII and ADA discrimination by *pro se* plaintiff dismissed).

Here, in asserting that Plaintiff's claim is untimely, Defendant commenced calculating the 90-day period in which Plaintiff was to file this action on May 26, 2011, the date Plaintiff received the Right to Sue Letter.  Although it is undisputed that Plaintiff's claim was required to be filed within 90 days from Plaintiff's receipt of the EEOC's Right to Sue Letter, § 2000e-5(f)(1) does not specify the method for computing the 90–day period.[6]  Nevertheless, pursuant to Fed.R.Civ.P. 6(a)(1)(A) provides that

---

[6] Although 29 C.F.R. § 1614.604(d), applicable to employment discrimination actions regarding federal sector employment, provides that "[t]he first day counted shall be the day after the event from which the time period begins to run and the last day of the period shall be included, unless it falls on a Saturday, Sunday or Federal holiday, in which case the period shall be extended to include the next business day," the court's research reveals no parallel provision applicable to employment discrimination actions involving private sector employment.

where a "statute does not specify a method of computing time, . . . [w]hen the period [of time in which a claim is to be filed] is stated in days or a longer unit of time: exclude the day of the event that triggers the period . . . ." (bracketed text added).  This court's research establishes that the Second Circuit and its District Courts count the statutory 90-day limitations period for filing employment discrimination actions commencing on the day after the plaintiff receives the EEOC's right to sue letter.  *See*, *e.g.*, *Zerilli-Edelglass*, 333 F.3d at 78 (computation of 90-day period in which to file action commenced with the day following the plaintiff's receipt of the right to sue letter); *Kane v. Douglas, Elliman, Hollyday & Ives*, 635 F.2d 141, 141-42 (2d Cir. 1980) (measuring 90-day period in which to file employment discrimination claim from the day after the plaintiff received right to sue letter); and *Allah-El v. Long Island College Hospital*, 577 F.Supp.2d 664, 664 (S.D.N.Y. 2008) (same).

In the instant case, because Plaintiff indisputably received the Right to Sue Letter on May 26, 2011, the computation of the 90-day period began the next day, on May 27, 2011.  Accordingly, the 90-day period is comprised of the remaining five days in May 2011, 30 days in June, 31 days in July, and 24 days in August, totaling 90 days, such that Plaintiff's filing of the Complaint on August 24, 2011, occurred on the 90th day after he received the Right to Sue Letter.  Plaintiff's Complaint is thus timely, and Defendant's motion to dismiss the action as time-barred should be DENIED on this ground.

## 2.  Sufficiency of Plaintiff's Pleadings under Rule 12(b)(6)

Defendant's second basis for seeking dismissal of the instant action is that

pursuant to Rule 12(b)(6), Plaintiff has failed to allege sufficient facts to state a claim

under any of the federal employment discrimination statutes Defendant allegedly

violated with regard to Plaintiff's employment or subsequent termination.  (Defendant's

Motion, Doc. No. 10-3 at 5-9).  On a motion to dismiss under Rule 12(b)(6), the court

looks to the four corners of the complaint and is required to accept the plaintiff's

allegations as true and to construe those allegations in the light most favorable to the

plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d

50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as

true all factual allegations in the complaint, and draw all reasonable inferences in the

plaintiff's favor).

Two Supreme Court decisions require application of "a 'plausibility standard,'

which is guided by '[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71–72 (2d

Cir. 2009) (affirming dismissal of ADA discrimination claim) (*citing Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544 (2007), and *quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a

complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not

suffice.'" *Harris*, 572 F.3d at 72 (*quoting Iqbal*, 556 U.S. at 678). " 'Second, only a

complaint that states a plausible claim for relief survives a motion to dismiss,' and

'[d]etermining whether a complaint states a plausible claim for relief will ... be a

context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.' " *Id.* (*quoting Iqbal*, 556 U.S. at 663-64).  Despite *Twombly*, courts

remain obligated to liberally construe a *pro se* complaint. *Harris*, 572 F.3d at 72 (*citing*

9

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570. "Asking for plausible grounds to infer [employment discrimination] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [employment discrimination]." *Twombly*, 550 U.S. at 556. "Specific facts are not necessary," because the plaintiff "need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.' " *Erickson*, 551 U.S. at 93 (*quoting Twombly*, 550 U.S. at 555).   Thus, although Plaintiff need not plead sufficient facts to establish a *prima facie* case of employment discrimination to survive Defendant's motion, the court considers the elements of a *prima facie* case in determining whether there is sufficient factual matter in the Complaint which, if true, give Defendant "fair notice" of Plaintiff's employment discrimination claims and the grounds on which such claims rest. *Erickson*, 551 U.S. at 93.  In determining whether sufficient facts in the Complaint provide Defendant with "fair notice" of the grounds on which Plaintiff's employment discrimination claims rest, the court liberally construes the Complaint with an eye toward the elements of an employment discrimination claim under Title VII and the ADEA.

Regardless of whether the alleged employment discrimination is based on race,

religion, national origin, age, or disability, courts analyze disparate treatment claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("*McDonnell Douglas*").  *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006).  Specifically, the plaintiff must first establish a *prima facie* case of employment discrimination, after which the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the alleged disparate treatment, thus shifting the burden back to plaintiff to establish that defendant's proffered legitimate non-discriminatory reason is mere pretext.  *Demoret*, 451 F.3d at 151 (citing *McDonnell Douglas*, 411 U.S. at 802–04).  The *McDonnell Douglas* framework covers employment discrimination claims brought under Title VII which "prohibits employment-related discrimination on the basis of race, color, religion, sex or national origin and retaliation against employees who complain about discrimination."  *Mathirampuzha v. Potter*, 548 F.3d 70, 74, 78 (2d Cir. 2008) ("Title VII claims are ordinarily analyzed under the familiar burden-shifting framework of [*McDonnell Douglas*], and its progeny."), the ADEA, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106–07 (2d Cir. 2010) ("we remain bound by, and indeed see no reason to jettison, the [ *McDonnell Douglas* ] burden-shifting framework for ADEA cases that has been consistently employed in our [the Second] Circuit." (bracketed material added)), and the ADA, *McBride v. BIC Consumer Products Manufacturing Company, Inc.*, 583 F.3d 92 (2d Cir. 2009) ("Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in [*McDonnell Douglas*]").  As such, all of Plaintiff's claims, if sufficiently stated, would be analyzed under the *McDonnell Douglas* burden-shifting test.

To survive a motion to dismiss, however, a plaintiff asserting employment discrimination claims "need not allege 'specific facts establishing a *prima facie* case of discrimination'" under *McDonnell Douglas*. *Boykin v. KeyCorp*, 521 F.3d 202, 212 (2d Cir. 2008) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). Specifically, "the *McDonnell Douglas* burden-shifting framework 'is an evidentiary standard, not a pleading requirement' ... [such] that to require more than Rule 8(a)'s 'simplified notice pleading standard' would unjustly impose a heightened pleading requirement on the plaintiff." *Boykin*, 521 F.3d at 212 (*quoting Swierkiewicz*, 534 U.S. at 510, 512–13). Despite the Supreme Court's recent pronouncement of a plausibility standard for assessing motions to dismiss a complaint filed by a *pro se* plaintiff, Rule 8(a)'s "notice-pleading" standard applies to employment discrimination claims based on race, national origin, religion, gender, age, and disability, *Boykin*, 521 F.3d at 213-14, here, all of Plaintiff's claims. *See also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (despite *Twombly*'s plausibility standard, courts "remain obligated" to liberally construe *pro se* complaints).

Establishing a *prima facie* case of employment discrimination under Title VII and the ADEA requires the plaintiff demonstrate (1) membership in a protected class; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination, *i.e.*, a causal connection between the adverse employment action and membership in the protected class. *Gorzynski*, 596 F.3d at 109–10. Although Plaintiff "need not allege 'specific facts establishing a *prima facie* case of discrimination' under *McDonnell Douglas*," *Boykin*, 521 F.3d at 212 (*quoting Swierkiewicz*, 534 U.S. at 508), absent any facts sufficient to

provide Defendant with "fair notice" of the grounds on which such claims rest, the Complaint must be dismissed.  *Erickson*, 551 U.S. at 93.  Here, Plaintiff fails to allege any facts that could plausibly be construed as establishing Plaintiff's discharge was based on his membership in any of the protected classes of race, national origin, religion, sex, or age.

In particular, although Plaintiff alleges facts in support of the first three factors, including that (1) Plaintiff belonged to two protected classes, including age (45) and sex (male), (2) Plaintiff was qualified for his job with Defendant, and (3) Defendant terminated Plaintiff's employment, the Complaint is devoid of any factual allegations giving Defendant fair notice of any grounds, based on either direct or circumstantial evidence, supporting an inference that Plaintiff's termination was based on his membership in either protected class as required to establish the fourth factor of a *prima facie* case.  Insofar as Plaintiff, while employed by Defendant, was a male of 45 years in age, Plaintiff's allegation that he was hired by the Defendant just one year prior to his termination establishes that such membership in the relevant protected classes of sex and age would have been readily apparent to Defendant when Plaintiff was hired, thus rendering implausible that any such class membership was a ground for termination just one year later.  *See Coleman v. Prudential Relocation*, 975 F.Supp. 234, 241 (W.D.N.Y. Aug. 25, 1997) ("Although as plaintiff notes, her membership in the protected class at the time of her hire does not preclude her as a matter of law from bringing an ADEA claim, it certainly strains credulity to think that Prudential 'suddenly developed an aversion to older people' within a year after hiring plaintiff").  While Plaintiff alleges in his Complaint that he was replaced by younger workers, Complaint ¶

19, Plaintiff asserts for the first time in opposition to Defendant's Motion that such younger workers were also males, Plaintiff's Response at 2, thus further rendering implausible Plaintiff's sex discrimination claim.  Furthermore, Plaintiff alleges that he was not afforded use of the Defendant's attendance point system prior to termination, unlike "other employees" whom Plaintiff failed to identify or to otherwise specify whether such employees were not members of the protected classes to which Plaintiff belongs. Plaintiff also fails to allege that Defendant did not terminate any other employee, who is neither male nor over age 40, and who, either with or without Defendant's permission, left work during an assigned shift.

Nor does Plaintiff allege any other facts which, if true, would establish that Plaintiff, based on his membership in a protected class, was subjected to any harassment by Defendant.  Plaintiff's allegations of harassment are construed as alleging employment discrimination based on hostile work environment.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of *pro se* complaint are held to less stringent standards than formal pleadings drafted by attorneys).  Harassment in the workplace is actionable as employment discrimination when it creates a hostile work environment, *i.e.*, a work environment that is "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [the plaintiff's] employment were thereby altered."  *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).  Generally, to establish a hostile work environment, incidents of harassment must be more than "'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  *Id.* at 374 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).  "Isolated acts, unless very serious, do not meet the threshold

of severity or pervasiveness." *Id.* (citing *Brennan v. Metropolitan Opera Association, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)).

To state an employment discrimination claim based on a hostile work environment, Plaintiff must plead facts tending to show the challenged conduct (1) is objectively severe or pervasive, creating an environment a reasonable person would find hostile or abusive; (2) creates an environment the plaintiff subjectively perceived as hostile or abusive; and (3) creates such abusive or hostile work environment because of some characteristic of the plaintiff that is protected by Title VII. *See Patane v. Clark*, 508 F.3d 106, 113, 114-15 (2d Cir. 2007) (reversing district court's dismissal of employee's hostile work environment claim for failure to state a claim where the plaintiff alleged sufficient facts to satisfy all three prongs of hostile work environment claim). Further, "[t]he Supreme Court has held that a work environment's hostility should be assessed based on the 'totality of the circumstances.'" *Id.* at 113 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). Factors relevant to this inquiry include "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). Nevertheless, to avoid dismissal for failing to state a claim, the pleaded facts need only support the conclusion that the plaintiff "was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.'" *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)). The allegations in the instant complaint fail to meet this standard.

In particular, although Plaintiff alleges he was "subjected to harassing

comments" by Toorigan and Karaga, and "threatened with physical abuse by Toorigan,

EEOC Charge at 1, Plaintiff does not indicate the subject of the alleged harassing

comments or the nature of the alleged threatened physical abuse, nor does Plaintiff

allege that such comments and threats were anything other than sporadic or episodic.

Significantly, Plaintiff does not allege he was subjected to name-calling, slurs, or bad

jokes related to any protected personal characteristics, or that Plaintiff worked under

conditions different than other employees, such as being limited to shorter breaks,

separated from the rest of Defendant's employees during work breaks, or subjected to

references adverse to Plaintiff's sex, age, or disability by Defendant proximate with

Plaintiff's termination.  Instead, Plaintiff asserts only bare allegations and conclusory

statements that he was subjected to "harassing comments" and threats of "physical

abuse" from his supervisor and "harassing comments" from another employee of

Defendant, EEOC Charge at 1.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice

[to state a claim].").  Because Plaintiff has failed to allege facts establishing the

frequency of the "comments" and "threats" so as to determine whether the comments

and threats were more than episodic, described even one of the allegedly harassing

comments or threats to determine whether the comment or threat was predicated on

any Title VII protected characteristic, or was severe as opposed to merely offensive, it is

impossible to determine whether such comments or threats could unreasonably

interfere with Plaintiff's work performance as required to state a hostile work

environment claim.  The Complaint thus fails to plead sufficient facts providing

Defendant with fair notice as to the grounds for Plaintiff's employment discrimination

claims asserted under the ADEA and Title VII as to which Defendant's motion should be GRANTED.

With regard to Plaintiff's disability-based employment discrimination claim, although a plaintiff need not establish every element of a *prima facie* case of disability-based employment discrimination to survive Defendant's motion, *Boykin*, 521 F.3d at 212 (*quoting Swierkiewicz*, 534 U.S. at 508).  Absent any facts sufficient to provide Defendant with "fair notice" of the grounds on which such claim rests, however, the Complaint must be dismissed.  *Erickson*, 551 U.S. at 93.  As such, the court bears in mind that the elements of a *prima facie* case of disability-based employment discrimination include (1) the employer is subject to the ADA; (2), the plaintiff is disabled within the meaning of the ADA or is so perceived by his employer; (3) the plaintiff was otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation of the disability; and (4) the plaintiff suffered an adverse employment action because of the disability.  *Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

As an initial matter, the Second Circuit has not stated whether Plaintiff's type-2 diabetes constitutes a disability under the ADA, although one district court that considered the issue determined it does not.  *See Epstein v. Kalvin-Miller Intern., Inc.*, 100 F. Supp.2d 222, 228-29 (S.D.N.Y. Jun. 21, 2000) (holding that employee's type-2 diabetes was not "disability" under ADA, even if failure to take medication would have limited his major life activities, where treatment permitted employee to perform physical activities without limitation).  Assuming, *arguendo*, that Plaintiff's type-2 diabetes is an ADA-covered disability and that Defendant was aware of this disability, Plaintiff fails to

allege that such disability was the basis of Defendant's decision to terminate Plaintiff.

Rather, Plaintiff alleges only that he became "ill" and left work after an "altercation"

between Plaintiff and his supervisor on the day preceding his termination.  Plaintiff

further alleges he did not report to work the following day.  Significantly, nowhere in

Plaintiff's complaint does Plaintiff allege that he has diabetes; nor does Plaintiff allege

that he was ill on either one of the missed days because of his diabetes, or that

Defendant had notice that Plaintiff's diabetes caused Plaintiff's absence from work.

Plaintiff further fails to specify any reasonable accommodations in relation to his

disability Plaintiff ever requested prior to termination which Defendant denied to

Plaintiff.  *See Doverspike v. International Ordinance Technologies*, 817 F.Supp. 141,

150 (W.D.N.Y. 2010) (dismissing plaintiff's ADA claim where complaint was "devoid of

any allegation that defendant was ever aware of any of plaintiff's physical issues prior to

plaintiff's discharge, much less any negative impact such physical concerns could have

on plaintiff's ability to work, or that plaintiff ever requested, and was denied, a

reasonable accommodation of such disabilities.").  As such, the Complaint fails to plead

sufficient facts to give Defendant fair notice of the grounds on which Plaintiff's ADA

claim rests and Defendant's motion should, on this ground, be GRANTED.[7]

The burden-shifting framework set forth by McDonnell Douglas also applies to

Plaintiff's retaliation claim, Complaint ¶ 13(h).  *See Stratton v. Dept. for the Aging for*

---

[7] Plaintiff's Response contains several supplementary factual allegations against the Defendant, including the allegation that Plaintiff suffers from type-2 diabetes.  However, as it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss," the allegations contained in Plaintiff's Response cannot correct the deficiencies of his Complaint.  *Dininny v. Trentanelli*, 2010 WL 5343180, at * 5 (W.D.N.Y. Dec. 20, 2010) (*quoting Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 526 (S.D.N.Y. Aug. 18, 1977)) (additional cited cases omitted).

*the City of New York*, 132 F.3d 869, 879 (2d Cir. 2000).  The plaintiff must first present sufficient evidence to establish a *prima facie* case of retaliation, *i.e.*, a plaintiff must plead facts that "would tend to show that: (1) she participated in protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action."  *Patane*, 508 F.3d at 115 (*citing Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)).  "Protected activity" includes "informal protests of discriminatory employment practices, including making complaints to management. . ."  *Sumner v. United States Postal Service*, 899 F.2d 203, 209 (2d Cir.1990).  "Complaints about conduct clearly prohibited by the statute need not mention discrimination or use particular language."  *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F.Supp.2d 345, 357 (S.D.N.Y. Jan. 11, 2007) (*citing Ramos v. City of New York*, 1997 WL 410493, at * 3 (S.D.N.Y. July 22, 1997) (no "magic words" must be used)). "However, ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity."  *Id.* (*citing Ramos*, 1997 WL 410493, at *3 ("[T]he complaint must put the employer on notice that . . . discrimination is occurring.") (citation omitted)).

Here, again, Plaintiff's retaliation claim is limited to the bare and conclusory assertions that Defendant retaliated against Plaintiff "because I complained about discrimination or harassment directed toward me."  Complaint ¶ 13(h).  According to Plaintiff, since terminating Plaintiff's employment, Defendant gave false information to the New York State Department of Labor ("Labor Department").  Complaint ¶ 13(j). Liberally construing the Complaint with the statements Plaintiff included in the EEOC

Charge establishes Plaintiff is claiming Defendant made the allegedly false statements

to the Labor Department  to "intentionally and purposefully" prevent Plaintiff from

obtaining unemployment benefits, thereby causing Plaintiff economic hardship and

impeding Plaintiff's right to exercise his option to COBRA benefits.  EEOC Charge at 2.

Plaintiff's allegations on his retaliation claim, however, are mere conclusory assertions

insufficient to support a retaliation claim.

In particular, although Plaintiff was not required to file formal complaints about

Defendant's asserted discriminatory employment practices with management, *Sumner*,

899 F.2d at 209, Plaintiff's description of the retaliatory conduct is so vague as to be

ambiguous and it is not possible to determine, based on the allegations of the

Complaint, to whom Plaintiff complained, about what Plaintiff complained, or what false

information Defendant allegedly gave to the Labor Department.  Nor is it possible to

determine whether Plaintiff was, in fact, denied unemployment insurance and COBRA

benefits, or whether any denial of such benefits is attributable to some false statement

by Defendant.  In short, the allegations of the Complaint fail to give Defendant notice

sufficient to permit Defendant to prepare a defense to the claim.  *Int'l Healthcare Exch.,*

*Inc.*, 470 F.Supp.2d at 357.

Finally, where a case is properly before a district court on the basis of federal

question jurisdiction, the court has supplemental jurisdiction over "all other claims that

are so related to the claims in the action within such original jurisdiction that they form

part of the same case or controversy."  28 U.S.C. § 1367(a). The district court, however,

may decline to exercise supplemental jurisdiction over a claim if (1) the claim raises

novel or complex issues of state law, (2) the state law claim "substantially dominates"

over the federal claim, (3) the district court has dismissed all federal claims, or (4) there

are other compelling reasons or exceptional circumstances that would justify declining

jurisdiction.  28 U.S.C. § 1367(c)(1)-(4).  Here, as all of Plaintiff's federal claims should

be dismissed, pursuant to 28 U.S.C.A. § 1367(c)(3), the court should decline to

exercise supplemental jurisdiction over Plaintiff's state human rights law claims under

New York State Human Rights Law, N.Y. Exec Law § 290 *et. seq.*  *See Nace v.*

*Achievement & Guidance Centers of America, Inc.*, 213 F.3d 626, 626 (2d Cir. 1998)

(holding that the district court "acted well within its discretion in dismissing [Plaintiff's]

state law claims. . ." pursuant to 28 U.S.C.A. § 1367(c)(3)).


## CONCLUSION

Based on the foregoing, Defendant's motion (Doc. No. 10) should be DENIED as

to Defendant's argument that the action is time-barred, but GRANTED on the basis that

Plaintiff has failed to state a claim for which relief can be granted, and the Clerk of

Court should be directed to close the file.

In the event the District Judge agrees the Complaint should be DISMISSED for

failure to state a claim, Plaintiff should be permitted to file an amended complaint within

30 days following the District Judge's order.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Dated:      May 31, 2012
             Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,*  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 31, 2012
Buffalo, New York